## Galbraith *versus* Zimmerman.

1. The deposition of an interested witness taken in an equity proceeding when both parties are alive, is admissible in evidence after the death of one of said parties in an action of ejectment touching the same subject-matter between the survivor and the representative of the party deceased.

2. The Supreme Court will not reverse for the erroneous rejection of evidence, where the evidence, if admitted, could not have affected the result of the litigation.

3. Whether or not there has been a delivery of a deed, is generally a question for the jury. Where, however, there is no evidence of delivery, the question should not be submitted to the jury.

4. The evidence in the present case reviewed, and held insufficient to warrant the submission of the question of delivery to the jury.

April 18th 1882. Before SHARSWOOD, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. MERCUR, J., absent.

ERROR to the Court of Common Pleas of *Montgomery county* : Of January Term 1882, No. 282.

Ejectment, by William Galbraith against Joshua Zimmerman, to recover a tract of farm land in Montgomery county. Plea, the general issue. The defendant died before trial, and his heirs were substituted on the record.

On the trial, before Ross, P. J., the plaintiff's evidence showed that in 1878 the plaintiff and Joshua Zimmerman made a verbal agreement to exchange certain real estate, Galbraith to convey to Zimmerman eight houses in Philadelphia, and

Zimmerman to convey to plaintiff the farm in question. Galbraith executed the deeds on his part, and placed them on record. Zimmerman and wife executed a deed for the farm, but it was never actually delivered, and was produced on the trial by defendants. Prior to this suit Galbraith had filed a bill in equity for specific performance, which, after reference to an examiner and master, was dismissed, on the ground, inter alia, that the plaintiff had an adequate remedy by ejectment.

The plaintiff alleged that there had been a legal, if not an actual delivery of the deed executed by Zimmerman, and for the purpose of proving facts showing such delivery, called one P. M. O'Connel, who, being sworn on his voir dire, admitted that he was interested in the result of the suit, having an agreement with the plaintiff to purchase from him the farm, in case he recovered it. The witness was rejected as incompetent. Plaintiff then offered in evidence the deposition of said McConnel which had been taken in the above mentioned equity suit, during Zimmerman's life and before the witness acquired such interest. Objected to; objection sustained; exception. The deposition of Galbraith, the plaintiff, taken in the same equity suit, was admitted in evidence.

The court charged the jury to the effect that, there being no evidence of a delivery of Zimmerman's deed, the plaintiff could not recover; and thereupon upon the suggestion of the plaintiff's counsel, entered a non suit, which the court subsequently refused to take off.

The plaintiff thereupon took this writ of error, assigning for error the rejection of O'Connel's deposition and the refusal to take off the non-suit.

*George N. Corson*, for the plaintiff in error.—The deposition of O'Connel, taken in the lifetime of the defendant was clearly admissible. No distinction can be drawn between the deposition of Galbraith, which was admitted, and that of O'Connel which was rejected: Hays's Appeal, 10 Norris 268; Pratt v. Patterson, 31 P. F. S. 114; Evans v. Reed, 28 P. F. S. 415; Same v. Same, 3 Norris 254.

*George W. Rogers*, for the defendant in error.

Mr. Justice GREEN delivered the opinion of the court, May 29th 1882.

We are very clear that there was error in the rejection of O'Connel's deposition. At the time it was taken he was a competent witness, notwithstanding his interest, and under the well settled rule in such cases, the testimony then taken could

be given in evidence at the subsequent trial. The former controversy was practically between the same parties and in relation to the same subject matter. In that proceeding O'Connel's testimony was taken. The objection to his competency on account of his interest in the suit, could not have prevailed if it had been then made. At the time of the trial of the present action, Zimmerman being dead, and the witness interested against him, the objection on the ground of interest necessarily prevailed and he was properly excluded. But when his testimony, taken when he was competent, in a proceeding relative to the same subject matter, and practically between the same parties, was offered, there was no legitimate reason for its exclusion. The learned court below admitted the deposition of the adverse party, Galbraith, taken in the same proceeding, after having rejected him as a witness on the trial, but for some reason which is not clear to us, rejected the deposition of O'Connel, who was not a party, but merely an interested witness. The following cases establish very clearly the competency of the rejected deposition: Pratt *v.* Patterson, 31 P. F. S. 114.; Evans *v.* Reed, 28 P. F. S. 415, and 3 Norr. 254; Hays's Appeal, 10 Norr. 265. The test of present admissibility is the competency of the testimony at the time it was given. Thus in Hays's Appeal, supra, we said on p. 268: "When the plaintiff testified he was undoubtedly a competent witness, and nothing that occurred thereafter would have justified the court or master in excluding his testimony." In 31 P. F. S. on p. 117. Mr. Justice MERCUR, speaking of Evans *v.* Reed, said: "There it was said, 'if the deposition of a party be duly and regularly taken so as to be admissible in evidence in a pending case, it is very clear that it would be admissible in a subsequent suit, between the administrators of the parties, involving the same subject matter.' Here it is a subsequent suit, tried after the death of one of the parties, and involving the same subject matter. The very case assumed there, substantially exists here. In each case the testimony was not only admissible when taken, but had actually been given in evidence."

But, notwithstanding we are of opinion that the learned judge of the court below was in error in rejecting O'Connel's deposition, we do not think it proper to reverse the case. The reason is that in our view it was entirely immaterial. The deposition of O'Connel has been printed and is returned with the record. We have read the whole of it with the utmost care, and are constrained to say that if it had been admitted and gone to the jury the court would nevertheless have been bound to order a non-suit or direct a verdict for the defendant.

The action was ejectment for a tract of land owned by the defendant, Joshua Zimmerman, and alleged to have been con-

[Galbraith v. Zimmerman.]

veyed by Zimmerman to Galbraith, the plaintiff. It was proved that there was a verbal agreement between the parties for the exchange of the tract in question for eight houses and lots of the plaintiff situate in Philadelphia.

It was further proved that the plaintiff had executed the deeds for the eight lots to be conveyed by him, and had placed them on record. The last of them was dated January 6th 1879, and the first August 29th 1878. The verbal agreement was partly made in the early part of August 1878. The testimony showed, however, that it was not then completed, as Zimmerman insisted upon seeing the eighth house before he would close the bargain. He did subsequently see it while it was in the course of construction, but it does not appear that at any time after that he was really willing to make the exchange. At an early stage of the negotiations a written agreement for the exchange had been prepared at the instance of Galbraith and an attempt was made to get Zimmerman to sign it, but it was unsuccessful. He never signed it. At the time the verbal agreement was made, it was proposed that a written agreement should be prepared, but both parties said their word was as good as their bond, and it was not done. At the same time O'Connel proposed to make out the papers for them but both declined, and each said he would have his own papers prepared. Afterwards Galbraith executed deeds for all of the eight houses, but the last one was not executed till January 6th 1879.

These deeds were placed on record by Galbraith and this of course constituted a good delivery on his part. A deed was also prepared and executed by Zimmerman and wife. In point of fact it was never delivered to Galbraith or to any one for him, nor was it ever placed upon record. Delivery is a matter of fact, and a question of delivery is a question of fact and in all ordinary cases must be disposed of by a jury. If there was evidence enough in this case to sustain the verdict of a jury to the effect that a delivery of the deed from Zimmerman to Galbraith had taken place, the court below was in error and the judgment would have to be reversed. A most patient consideration of the testimony has convinced us that there was no such evidence in the case, including the deposition of O'Connel, and for that reason the judgment must be affirmed. It is apparent from the testimony of both the plaintiff and O'Connel, that Zimmerman, not long after the execution of the deed from himself and wife to Galbraith, repented of his bargain and determined not to carry it out. Thus Galbraith testifies : "Every time I saw Zimmerman I would speak to him about the title to the farm. He would always make excuse and say he expected to be back in a week, or expected to be down in week. Afterwards he told me the deed was in Norristown. When Mr. O'Connel and I met him here on January 13th 1879,

he said the deed was at the Rambo House; we went there but could find no deed. I believe there are two houses of same name or similar, and we went to both but got no deed." O'Connel says: "I believe Mr. Galbraith and I went to see Zimmerman. I believe I took the deeds with me. We went to Zimmerman's house. I told Zimmerman I believe that these were the deeds, presented them to him and wanted to deliver them." Then Zimmerman produced the deed signed by himself and wife, to Galbraith, and said, "there was the deed all ready, but he wanted to see the property before he delivered it." . . . . "He said he wanted to see the property before he delivered the deed and the house that was not finished." It is evident there was no delivery up to that time. The witness adds: "I believe I did not see Mr. Zimmerman again in Philadelphia until· after this suit was brought." The date of this interview was not given, but the witness says it was after Zimmerman had seen the seven houses and before he had seen the eighth house. Some time later the witness and Galbraith met Zimmerman at Norristown. He testifies : "We asked him about the deed and he said he had sent it to be recorded. This was after his visit to the eighth house. . .·  .   I think I next saw him in January, this year (1879). Galbraith and I were going to his house and we met him in Norristown. I had the Galbraith deeds along. I wanted Zimmerman to take them and he refused. I don't recollect what was said; we asked where his deed was and he said at some hotel, I think the Veranda." This is evidently the same interview described by Galbraith. The latter testified further: "On the 13th of January 1879, Mr. O'Connel and I came to Norristown with all these deeds to to be given to Mr. Zimmerman. We met Mr. Zimmerman on the street in a carriage in Norristown as we were going out. We stopped and spoke and he told us to follow him down where he stopped near the depot ; we were on friendly terms then. I told him we had been to Rogers's office and the deed was not there, and I asked Zimmerman where the deed was, and he said at the Rambo House. I told him that I had written once or twice for the title to the farm and that he had not answered my letter, and that if he did not give me the deed at once I would have to enter suit against him. Mr. O'Connel then offered him all the deeds to the houses and said, here are all the deeds and papers. He·made some excuse and said the deed to the farm was at the Rambo House. We went there and could not find it. He then went into the car and called me in by myself ; he said, Galbraith I don't want to give that farm now ; I don't want houses in the city now, and the houses are with you and the farm with me, and I would rather keep the farm." It is quite clear there was no delivery of the deed up to this

time, and equally certain that there was no intention to deliver it. Galbraith says further: "The next and last time I saw him was on February 6th 1879." He then describes another interview in which Zimmerman again refused to give him the farm, and the witness threatened to bring a suit at once. He also describes a meeting in early October when the written agreement for the exchange was signed by Galbraith and offered to Zimmerman for signature but he refused. It is too clear for argument from the testimony of the plaintiff and his own witness that the defendant, Zimmerman, refused to sign any agreement in writing, that he never delivered the deed for the farm to Galbraith, or to any one for him, and that he never recorded it, or sent it to be recorded ; and further, that he refused to receive the deeds of Galbraith for the eight houses and deliberately announced to Galbraith his purpose to disregard the verbal agreement, and to refuse to convey the farm. The action is ejectment, founded upon an allegation of actual title in the plaintiff, by force of a deed executed and delivered. There is no proof of such a delivery, and had the rejected deposition of O'Connel been admitted and the jury found a verdict for the plaintiff, it would have been the duty of the court to set it aside. The deed for the farm was in the possession of Zimmerman at the only time when it was seen, there is not a particle of testimony that it was ever out of his possession, in point of fact, and it was produced by the defendant at the trial, on the call of the plaintiff. In these circumstances it was the clear duty of the court to refuse the deposition of O'Connel as immaterial and to direct a non-suit.

Judgment affirmed.